UNITED STATES DISTRICT COURT 08- cv-5159
SOUTHERN DISTRICT OF NEW YORK Crotty, Judge
-----------------------------------------------------------X
MARIA ESPINOZA

          Plaintiff,  **COMPLAINT**

 -against-

NEW YORK CITY, SGT BENEDETTA of the 34th PCT.,
POLICE OFFICER CHRISTIAN PEREZ of the 34th PCT.,
POLICE OFFICE ERIC RODRIGUEZ of the 34th PCT
AND UNIDENTIFIED POLICE OFFICERS  **JURY TRIAL DEMANDED**

       Defendant(s).
-----------------------------------------------------------X

  The plaintiff, complaining of the defendants, by her attorney, FRED LICHTMACHER, ESQ., respectfully shows to this Court and alleges:

## JURISDICTION

1 Jurisdiction is founded upon the existence of a Federal Question.

2 This is an action to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. § 1983.

3 Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343(3 & 4).

4 Venue is appropriate pursuant to 28 U.S.C. Sections 1391 (b) (1 & 2).

## PARTIES

5 That the plaintiff, MARIA ESPINOZA, is a resident of the County, City and State of New York, she is of Peruvian descent and she is a naturalized American citizen.

6 Upon information and belief, that at all times hereinafter mentioned, the defendant, CITY OF NEW YORK, (NYC) was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant defendants Sgt. Benedetta, Police Officers Christian Perez, Eric Rodriguez and Unidentified New York City Police Officers all of the 34th precinct were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

7      Upon information and belief, that at all times hereinafter mentioned, defendants were employed by the defendant, NYC, as members of its police department.

8      Upon information and belief, that at all times hereinafter mentioned, the defendant, NYC, its agents, servants and employees operated, maintained and controlled the NEW YORK CITY POLICE DEPARTMENT (NYPD), including all the police officers thereof.

9      The NYPD, is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the commissioner of the NYPD is responsible for the policies, practices and customs of the NYPD as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers and civilian employees and is the final decision maker for that agency.

10     This action arises under the United States Constitution, particularly under provisions of the Fourth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

11     Each and all of the acts of the defendants alleged herein were done by the defendants, acting as state actors acting under the color of law.

## STATEMENT OF FACTS

12     In March of 2005 the plaintiff became aware that her teenaged daughter was dating a member of the NYPD's 34th precinct.

13     Plaintiff approached the officer's supervisor, defendant Sgt Benedetta who was in a marked police car with defendant police Officers Perez and Rodriguez of the 34th Pct on 181st and St Nicholas Avenue and informed him that one of his subordinate officers was dating and being intimate with her young daughter.

14     Defendant Benedetta responded by commenting to the plaintiff that she herself looked young and sexy and that he thought she would be good in bed and he asked her to go out to dinner or a bar with him.

15     Plaintiff rejected Benedetta's advances.

16      Benedetta began coming to where plaintiff worked as a legal street vendor, while on duty, frequently smelling of alcohol, and he repeatedly asked plaintiff to go out with her.

17      Plaintiff continued to reject Benedetta's advances.

18      Defendant repeatedly came to where the plaintiff worked, harassing her, yelling at her and hurling racial insults at her in front of her customers.

19      Plaintiff's daughter was being threatened by the police officer and plaintiff reported that fact to the 34th precinct, but nothing was done.

20      Plaintiff's daughter was being beaten by the officer dating her from the 34th precinct and plaintiff was reporting this fact to the 34th precinct but they refused to take action.

21      In spite of plaintiff reporting criminal conduct by the officer dating her daughter she was told by officers at the 34th precinct that they would do nothing because they do not get involved in personal relationships.

22      After plaintiff had refused Benedetta's advances on several different occasions, Benedetta screamed at her calling her a "fucking immigrant" and told her to go home to her country.

23      Afterwards, Benedetta had his subordinate officers issue several bogus criminal summonses to the plaintiff, as well as having her arrested on numerous occasions and on each occasion the false charges were dismissed.

24      Defendants writing bogus summonses and arresting plaintiff on false charges without legal justification included, but were not limited to the following occasions:

25      On November 4, 2006 defendant Perez, at the insistence of Benedetta, issued plaintiff two fraudulent tickets for disorderly conduct and for being an unlicensed vendor, though both accusations were patently false.

26      Plaintiff was forced to appear in criminal court on the matter on January 11, 2007 and both the false charges were dismissed by the Court.

27      On December 17, 2006 Benedetta again had a subordinate officer, this time the one who was dating, threatening and beating plaintiff's daughter, issue plaintiff another two fraudulent

summonses for disorderly conduct and for being an unlicensed vendor, though both accusations were patently false.

28   Plaintiff was again forced to appear in criminal court on the matter and on February 23, 2007 both these false charges were dismissed by the Court.

29   On December 19, 2006 Benedetta had another of his subordinate officers again issue a summons for a false charge against the plaintiff and again the false charge was dismissed after plaintiff was forced to once more appear in criminal court on February 26, 2007.

30   On June 6, 2007 Benedetta again had his subordinates issue two false charges for disorderly conduct and for being an unlicensed vendor though both accusations were patently false and these charges also would later be dismissed by the Court.

31   On two occasions after the plaintiff had rejected Benedetta's advances plaintiff was arrested on false charges by the defendants, handcuffed, brought into the precinct, brought to central booking and subsequently those charges too were dismissed by the Court.

32   In the spring of 2006 plaintiff was arrested on false charges by the defendants and brought to the 34th precinct where she was forcibly strip searched and touched on her private parts by male defendants Rodriguez and Perez in front of Benedetta and in view of other arrestees who made obscene comments and cat calls at seeing plaintiff's exposed breasts.

33   Rodriguez and Benedetta expressly informed the plaintiff that there would be no more tickets issued to her if she just consented to "date" Benedetta.

34   On July 22, 2007, the police officer who had been dating the plaintiff's daughter shot her five times, killing her and he then killed himself.

35   After the murder suicide, the false arrests of the plaintiff stopped, she no longer received any more fraudulent summonses and Benedetta stopped pursuing her sexually.

**AS AND FOR A FIRST CAUSE OF ACTION
ON BEHALF OF PLAINTIFF
VIOLATION OF THE PLAINTIFFS' RIGHTS PURSUANT TO
42 U.S.C. § 1983 AND THE FOURTH AMENDMENT
FALSE ARREST**

36      Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

37      That the plaintiff's rights have been violated under the Fourth Amendment of the United States Constitution made applicable to the states via the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, in that plaintiff was subject to being repeatedly falsely arrested by the defendants.

38      That on several occasions, the defendants confined the plaintiff, in that plaintiff was not free to leave, defendants intended to confine plaintiff, plaintiff was conscious of confinement, plaintiff did not consent to confinement and confinement was not otherwise privileged.

39      As a direct result of defendants' actions, plaintiff was deprived of rights, privileges and immunities under the Fourth and Fourteenth Amendments of the United States Constitution being more particularly plaintiff's right to be free from arrest without probable cause.

40      That the said false arrests were caused by the defendants, without any legal justification, without authority of the law and without any reasonable cause or belief that the plaintiff was in fact guilty of crimes.

41      That various defendants who knew of the false arrests and allowed the illegal detentions of the plaintiff to continue, are liable to the plaintiff via their failure to act pursuant to their affirmative duty to intervene.

42      That the false arrests were committed by the defendants in retaliation for plaintiff complaining about the criminal actions of the 34th precinct police officer who was dating, threatening and beating plaintiff's daughter.

43      That the false arrests were commenced by the defendants in retaliation for plaintiff refusing to "date" Sgt Benedetta.

44      That the false arrests were initiated with racial animus, in that the defendants were abusing the plaintiff due to her being of Peruvian descent.

45      That the plaintiff was treated differently and worse than similarly situated Caucasian women by the defendants.

46     That by reason of the unlawful false arrests, the plaintiff was subjected to pecuniary harms, she lost business, she was subjected to great indignities, humiliation, anxiety, she was forced to make numerous criminal court appearances, she spent time in jail, her reputation in the community was damaged, she was prevented from conducting her normal affairs of business and she was subjected to numerous other harms.

47     That defendants Sgt Benedetta and Unidentified New York City Police Officers who are supervisors within the NYPD who knew of the false arrests and continued to allow and/or participate and/or cause the arrests of the plaintiff and who either directly participated in the violation of plaintiff's rights or who after learning of the violation failed to remedy the wrong are liable to the plaintiff for the violation of her rights pursuant to the Fourth Amendment and via the principle of supervisor liability.

48     That by reason of the aforesaid, the plaintiff has been damaged in a sum not to exceed TWO MILLION ($2,000,000.00) DOLLARS, she is entitled to an award of punitive damages and attorneys' fees are appropriate pursuant to 42 U.S.C. § 1988.

### AS AND FOR A SECOND CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF
### VIOLATION OF THE PLAINTIFF'S RIGHTS PURSUANT TO
### 42 U.S.C. § 1983 AND THE FOURTH AMENDMENT
### via an ILLEGAL SEARCH AND STRIP SEARCH

49     Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

50     That the plaintiff's rights have been violated under the Fourth Amendment of the United States Constitution made applicable to the states via the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, in that plaintiff was subjected to an illegal strip search by male officers in the presence of other male officers and in the presence of male arrestees.

51     That the strip search of plaintiff was committed without probable cause and without a reasonable suspicion that she had contraband and entirely without any legal justification, and was performed strictly for the perverted sexual satisfaction of the defendants.

52      That various defendants who knew of the illegal strip search and did not exercise their affirmative duty to intervene where there was a reasonable opportunity to do so are also liable to the plaintiff.

53      That the defendants intentionally and perversely caused the plaintiff's breasts to be viewed not only by themselves and their colleagues but by arrestees at the 34th precinct.

54      That by reason of the unlawful strip search, plaintiff incurred emotional harms she sought psychiatric help, it became necessary for her to be medicated, she suffered humiliation, mental anguish, anxiety, severe embarrassment, shame, she suffered pecuniary harms and that she was otherwise injured.

55      That by reason of the aforesaid, the plaintiff has been damaged in a sum not to exceed TWO MILLION   ($2,000,000.00) DOLLARS plus an award of punitive damages and that an award of attorney's fees is appropriate pursuant to 42 U.S.C. §1988.

### AS AND FOR A THIRD CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF
### VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO
### 42 U.S.C. § 1983 AND THE FOURTH
### AMENDMENT BY DEFENDANT NEW YORK CITY
### i.e., MONELL CLAIM

56      Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

57      That the plaintiff's rights have been violated under the Fourth Amendment to the United States Constitution as made applicable to the states via the Fourteenth Amendment by the defendant, NYC.

58      Defendant NYC and unidentified police officers who were supervisors and final decision makers, as a matter of policy and practice, have acted with a callous, reckless and deliberate indifference to plaintiff's rights under the Constitution and laws of the United States, in that they failed to adequately discipline, sanction, train, retrain, supervise or otherwise direct police officers concerning the rights of citizens, thereby causing the defendant officers in this case to engage in

the above-mentioned conduct.

59   That the defendant municipality, NYC, has been alerted to the use of false criminal charges brought by its employee officers to cover up and deter allegations being brought against officers and that the culture of bringing such false charges has been allowed to exist without repercussions to the officers who engage in such behavior.

60   That the defendant municipality, NYC, intentionally maintains an Internal Affairs Bureau which conducts sham investigations of its officers when allegations are brought by civilians and not initiated by the NYPD internally and that members of the NYPD know this and are thereby not deterred from committing unconstitutional acts such as the acts in the instant matter.

61   That the defendant municipality, NYC, intentionally maintains a Civilian Complaint Review Board which conducts sham investigations of its officers when allegations are brought by civilians and that members of the NYPD know this and are thereby not deterred from committing unconstitutional acts such as the acts in the instant matter.

62   That the NYPD had conducted a sham investigation into at least one officer involved in the instant matter prior to the acts complained of herein.

63   That in so doing the defendant NYC has caused, encouraged, condoned and has been deliberately indifferent to unconstitutional acts performed by members of the NYPD and the defendants in the instant matter and has thereby caused the violations of plaintiff's rights, including but not limited to plaintiff being repeatedly falsely arrested and plaintiff being illegally strip searched and groped by male officers.

64   That NYC knew of the patterns of misconduct articulated above and did nothing, and thereby acquiesced in, or tacitly authorized, the defendants' actions.

65   That NYC knew of the pattern of misconduct whereby minority women are strip searched without probable cause or a reasonable suspicion to believe they are carrying contraband and did nothing.

66   That NYC knew of the pattern of misconduct whereby officers would retaliate against

civilians making complaints of misconduct by the police.

67     That by reason of the aforementioned, plaintiff was subjected to emotional harms, pecuniary harms, she lost business, she was subjected to great indignities, humiliation, anxiety, she was embarrassed, humiliated, she sought psychiatric help, she needed to take medication, she was forced to make numerous criminal court appearances, she was imprisoned and she was subjected to numerous other harms.

68     That by reason of the aforesaid, the plaintiff has been damaged in a sum not to exceed TWO MILLION ($2,000,000.00) DOLLARS, and attorneys' fees are appropriate pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, plaintiff demands judgment against the defendants in a sum not to exceed TWO MILLION ($2,000,000.00) DOLLARS and punitive damages on the First Cause of Action; in a sum not to exceed TWO MILLION ($2,000,000.00)) DOLLARS and punitive damages on the Second Cause of Action; and in a sum not to exceed TWO MILLION ($2,000,000.00)) DOLLARS on the Third Cause of Action, along with reasonable attorney's fees pursuant to 42 U.S.C. § 1988 on all causes of actions together with costs and disbursements of this action; a trial by jury of all issues involved in this complaint; and such other and further relief as this Court may deem just and proper under the circumstances.

Dated: June 4, 2008
       New York, New York

                                            / s /
                                            FRED LICHTMACHER (FL-5341)
                                            Attorney for Plaintiff
                                            The Empire State Building
                                            350 5th Avenue Suite 7116
                                            New York, New York 10118
                                            (212) 922-9066

To:    Michael Cardozo
       Corporation Counsel City of New York
       100 Church Street
       New York, New York 10007